```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF OKLAHOMA

JOHNNY W. WOOD,                   )
                                  )
           Plaintiff,             )
                                  )
                                  )  Case No. CIV-18-239-RAW-KEW
                                  )
COMMISSIONER OF SOCIAL            )
SECURITY ADMINISTRATION,          )
                                  )
           Defendant.             )
```

### REPORT AND RECOMMENDATION

Plaintiff Johnny W. Wood (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. § 404.1521. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 41 years old at the time of the ALJ's decision. He has a high school education and worked in the past as an ingredient mixer and a mixing machine attendant. Claimant alleges an inability to work beginning on April 2, 2012, due to limitations resulting from hypertension, obesity, degenerative disc disease, bilateral carpal tunnel syndrome, peripheral neuropathy of the lower extremities, mild cognitive impairment, mood disorder/dysthymia, unspecified anxiety disorder, and impulse control disorder.

**Procedural History**

On December 22, 2014, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 20, 2017, the Administrative Law Judge("ALJ") John W. Belcher conducted a video hearing from Tulsa, Oklahoma, and Claimant appeared in Fort Smith, Arkansas. On September 8, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on May 31, 2018, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work, with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error by (1) failing to reach a proper RFC determination (with several subparts to the issue); and (2) failing to make findings at step five which are supported by the evidence.

**RFC Determination**

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease, obesity, bilateral carpal tunnel syndrome, peripheral neuropathy of the lower extremities, mild cognitive impairment, mood disorder/dysthymia, unspecified anxiety disorder, and impulse control disorder. (Tr. 16). He determined Claimant could perform sedentary work with additional limitations. In so doing, the ALJ found Claimant could lift or carry no more than twenty pounds occasionally and ten pounds frequently, with push/pull limitations consistent with lift and carry limitations; stand and/or walk for two hours out of an eight-hour day; and sit for six to eight hours out of an eight-hour day. Claimant can occasionally climb stairs and ramps, but he can never climb ladders, ropes, or scaffolding. He can occasionally stoop and kneel and frequently use his hands, bilaterally, for fingering, handling, and feeling. Claimant can perform simple and routine tasks and some complex tasks allowing for semi-skilled work, but he is limited to superficial contact with co-workers and supervisors. (Tr. 19).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of food and beverage order clerk, touch-up screener, and document preparer, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 30-31). As a result, the ALJ

concluded that Claimant was not under a disability from April 2, 2012, his amended alleged onset date, through the date of his decision. (Tr. 31).

Claimant contends the ALJ's RFC assessment was inconsistent with the evidence in the record and failed to include all his limitations. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Claimant first asserts the ALJ failed to account for his use of a cane in the RFC assessment. Claimant was seen by his podiatrist E.M. Feltner, DPM, on May 17, 2016. During his appointment, Claimant complained of recent falling and that he could not judge the position of his feet. He wanted to walk with his wife and thought he needed a cane. Upon examination, Dr. Feltner noted Claimant had burning pain in his feet, his proprioception was moderately diminished, and Claimant was unable to walk in a straight-line touching heel to toe. He noted Claimant looked at the floor during gait. He assessed Claimant with neuropathy, motor and sensory. Dr. Feltner's plan for Claimant going forward was to continue Claimant's current medication, and Dr. Feltner dispensed a cane to Claimant and provided him with demo balance exercises to practice daily until his next visit, which was recommended to be in three months. (Tr. 629).

The Commissioner argues the ALJ did not err by failing to account for Claimant's use of a cane in the RFC. The Commissioner maintains that Dr. Feltner merely "dispense[d]" a cane to Claimant for his exercise program and did not prescribe it or determine it was medically necessary. The Commissioner further notes that subsequent treatment notes from Dr. Feltner did not reference the cane, and the ALJ acknowledged in the decision that Claimant used a cane at the hearing and at a later doctor's appointment. (Tr.

7

20, 24). The Commissioner also relied on the ALJ's discussion of certain examination findings that Claimant had normal gait.

The Court agrees with Claimant that the ALJ should have specifically discussed Claimant's use of a cane in the RFC or why he rejected the evidence that Claimant used a cane. Although the Commissioner is correct that the ALJ acknowledged that Claimant used a cane when walking, when discussing the treatment note from Dr. Feltner from May 17, 2016 in the decision, the ALJ failed to mention that Dr. Feltner dispensed a cane to Claimant. (Tr. 23). The ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984).

Although the Commissioner suggests the cane was "dispensed" merely to assist Claimant with his exercise program and it was not medically necessary, this conclusion is unclear from Dr. Feltner's treatment record. Dr. Feltner's objective findings indicate Claimant was unable to walk in a straight line touching heel to toe, and Dr. Feltner also provided Claimant with exercises to do to help with his balance. (Tr. 629). Such a conclusion by this Court is inappropriate. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not

8

apparent from the ALJ's decision itself.") (citations omitted). On remand, the ALJ should address any limitations associated with Claimant's use of a cane when walking, and the basis for including or excluding any limitations in the RFC.

Claimant also includes several other limitations he contends the ALJ failed to include in the RFC. Although this Court has already remanded the ALJ's decision for additional findings on the RFC, it will briefly address Claimant's other arguments. Claimant asserts the ALJ's RFC determination failed to include limitations consistent with Claimant's ability to use his hands. Claimant contends his impairments should have at least limited him to, at most, occasional handling and fingering.

The ALJ discussed the evidence regarding Claimant's bilateral carpal tunnel surgeries as well as the opinions from Perry Inhofe, M.D., David Wong, M.D., and Stephen Wilson, M.D. (Tr. 21-22). He discussed the other evidence in the record. (Tr. 23-26). Although Dr. Inhofe, Dr. Wong, and Dr. Wilson all agreed Claimant was subject to a lifting limitation of ten pounds and no handling of vibrating tools, they did not impose any other manipulative limitations on Claimant. The ALJ also discussed the opinions of the state agency physicians who reviewed Claimant's medical records. (Tr. 26). Based on the "severity of the carpal tunnel syndrome[,]" the ALJ determined Claimant's "handling and feeling" should be limited, considering the limitation against the use of

9

"vibrating or impact-tools." The ALJ stated, "I do not find manipulative activities limited to more than a frequent basis." *Id*. The ALJ did not err in failing to include additional manipulative limitations in the RFC.

Claimant next argues the ALJ failed to properly assess his lifting capabilities and improperly considered the medical opinions on this issue. As noted above, Dr. Inhofe, Dr. Wong, and Dr. Wilson all agreed that Claimant had a ten-pound lifting restriction. (Tr. 340, 342, 370). The ALJ went to great lengths in his decision to explain why he rejected this restriction. He discussed the evidence from Dr. Wong, Dr. Inhofe, and Dr. Wilson in detail and provided reasons for his decision to give their opinions little weight. (Tr. 21-26). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Claimant next asserts the ALJ improperly disregarded the opinions of examining psychologists Dr. Horton and Dr. Spray. The ALJ made a detailed discussion of Claimant's mental impairments and explanation of his mental RFC in the decision. This discussion

10

included rejecting certain opinions of consulting psychologist Theresa Horton, Ph.D., and rejecting the opinions of psychologist Dr. Robert Spray, Jr., Ph.D. (Tr. 26-29). However, Claimant and the ALJ appear to read a portion of Dr. Spray's evaluation differently. (Tr. 524). Claimant maintains Dr. Spray determined his "relationships were strained due to easy irritability and agitation, that his forgetfulness and limited short-term memory could interfere with understanding and completing tasks, and that his anxiety symptoms might distract from his job duties." Claimant's brief, p. 15. Although the ALJ noted it was "difficult to read," he determined this portion of Dr. Spray's evaluation "stated that relationships are strained due to easy irritability and agitation. Further, forgetfulness does not limit short-term memory, concentration is intact with moderately, but not complex tasks. Finally, anxiety symptoms may distract from job duties." (Tr. 27). Because this Court has remanded the decision on another issue, the ALJ should take the opportunity to recontact Dr. Spray to determine what his evaluation specifically states and determine if it changes his analysis of Claimant's mental RFC. *See* 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved[.]").

Claimant further contends the ALJ failed to properly evaluate his subjective complaints. Because the evaluation of Claimant's pain and other symptoms is tied closely to the RFC determination, the ALJ should reconsider his assessment of Claimant' subjective complaints on remand. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the [symptom] evaluation is to help the ALJ access a claimant's RFC, the ALJ's [symptom evaluation] and RFC determinations are inherently intertwined.").

### Step Five Determination

Claimant asserts the ALJ's hypothetical questioning of the VE was improper because he failed to include all of Claimant's limitations in the RFC.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

12

The Court is remanding the case for the ALJ to re-evaluate the RFC based on the above-described deficiencies. Once the ALJ has addressed these deficiencies, he may be required to further modify the hypothetical questioning of the VE to accommodate any changes made to the RFC.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of September, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE